UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ABDUS SAMAD N. HAQQ,

                Plaintiff,

  -versus-

                                          **AMENDED COMPLAINT**

NEW YORK STATE DEPARTMENT OF
CORRECTIONAL SERVICES,                     06 CV 8156 (HB)
                                          ECF Case
                Defendant.
------------------------------------------------------------X

## PRELIMINARY STATEMENT

1.     This is an action about the civil rights of public employees to adhere to their religious beliefs while at work and the corresponding obligation of the government to reasonably accommodate the religious beliefs of its employees. The plaintiff Abdus Samad N. Haqq is a devout Muslim who for many years wore a kufi while working at a New York State Department of Correctional Services work-release facility in New York City. Despite the kufi's religious significance to Mr. Haqq and despite the fact that his wearing of the kufi created no problems whatsoever, the New York State Department of Correctional Services has now entirely barred Mr. Haqq from wearing his kufi while on duty. According to the Department's Acting Commissioner, "[T]he Department is vehemently opposed to the granting of any accommodations to security staff employees which alter the uniform grooming regulations for reasons of religious practice."

2.     New York State's refusal to accommodate the religious beliefs of prison guards stands in stark contrast to the policies of other agencies. The New York City Department of Correction

allows its guards to wear religious head coverings while on duty, and every major branch of the United States military allows its members to do so. Inmates in New York State prisons also are allowed to wear religious head coverings.

3.      The defendant's complete prohibition of Mr. Haqq's wearing a kufi, without any reasonable accommodation, violates his rights under Title VII of the Civil Rights Act of 1964. Mr. Haqq would like to resume wearing his kufi at work and thus seeks declaratory and injunctive relief barring the defendant from enforcing its complete ban on his wearing his kufi while on duty.

## JURISDICTION AND VENUE

4.      This Court has subject-matter jurisdiction over the plaintiff's claim pursuant to 28 U.S.C. §§ 1331, 1343(a)(3-4).

5.      Venue is proper pursuant to 28 U.S.C. § 1391(b) in that the plaintiff's claim arises in the Southern District of New York.

6.      Jurisdiction to grant declaratory judgment is conferred by 28 U.S.C. §§ 2201, 2202. Injunctive relief is authorized by Rule 65 of the Federal Rules of Civil Procedure. An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. § 2000e-5(k).

## PARTIES

7.  Plaintiff ABDUS SAMAD N. HAQQ is a New York State correction officer who resides in Brooklyn, New York.

8.  Defendant NEW YORK STATE DEPARTMENT OF CORRECTIONAL SERVICES is an agency of the State of New York and the plaintiff's employer.

## FACTS

**Mr. Haqq's Religious Background**

9.  The plaintiff Abdus Samad N. Haqq, who is fifty-three years old, is a devout Muslim. As part of his religious observance, Mr. Haqq attends mosque every Friday and prays five times daily in keeping with the central tenets of Islam.

10. According to his religion, Mr. Haqq wears a kufi whenever in public. The kufi is a thin, unobtrusive head covering, dating back to antiquity, that Muslims throughout the world traditionally wear. The kufi is a sign of piety and is an extremely important facet of Mr. Haqq's everyday religious observance. He considers it a crucial aspect of his identity both as an individual and as a member of the *ummah*, the world Muslim community.

11. An important element of the Muslim faith is to have *taqwa*, or consciousness of Allah, at all times. For Mr. Haqq, wearing a kufi helps serve that purpose. Furthermore, Islamic religious texts instruct men and women to dress modestly. For many devout Muslim men, including Mr. Haqq, this includes wearing a kufi.

12. Mr. Haqq's state-issued armored guard security license and drivers license, and his school-issued student identification card from John Jay College of Criminal Justice all depict him wearing a kufi.

13. Due to his frequent prayer, Mr. Haqq has developed a prayer mark, which is visible when he is not wearing a kufi. The prayer mark is a bruise-like discoloration in the middle of the forehead common to Muslims who observe the five-times-per-day prayer requirement, due to prostrating on hard surfaces during prayer. Mr. Haqq's prayer mark makes him readily identifiable as a Muslim to those who recognize this mark, particularly other observant Muslims.

**Mr. Haqq and Lincoln Correctional Facility**

14. Mr. Haqq has been employed as an officer for the State of New York Department of Correctional Services ("DOCS") for over twelve years. Since October 1996, he has worked at Lincoln Correctional Facility ("Lincoln"), a minimum-security, work-release institution that overlooks Central Park in New York City.

15.     Lincoln houses approximately 140 inmates in a dormitory-style setup, without locked cells. As part of their assignment to Lincoln, most inmates are permitted to leave the facility on a daily basis in order to facilitate reintegration into society after incarceration in higher-security facilities.

16.     While Lincoln is a correctional facility, the nature of its work-release program makes it far less regimented than most facilities in the state prison system. Inmates at Lincoln are free to move about the facility. Most leave Lincoln each day to go to work and many are permitted to leave for longer periods of time on furloughs to visit family. Inmates wear uniforms only in limited circumstances, such as when meeting with their various counselors or performing work detail. Otherwise, inmates wear civilian clothes within the facility.

17.     The relationship between inmates and guards, as well as among the guards themselves, is less formal at Lincoln than at most other correctional facilities. As part of his duties Mr. Haqq interacts closely with inmates on a daily basis. They discuss personal issues with him and come to him for advice about various topics.

18.     The uniform and appearance regulations for all DOCS uniformed employees is outlined in Directive 3083. The directive specifies that "[o]nly regulation issue uniform items and non-issue items approved by the Commissioner will be worn while on duty," without making reference to any reasonable exception or accommodation for religious attire. At all times during his shifts, Mr. Haqq wears the "Class B" uniform, as required under this directive.

19. Mr. Haqq normally works the 3 PM to 11 PM shift overseeing inmates as a Unit Officer in charge of Unit 4 North. Additionally, Mr. Haqq regularly swaps shifts to work the day tour that runs from 7 AM to 3 PM. He is in charge of care, custody and control of inmates. During his shifts, Mr. Haqq routinely is required to leave the facility to supervise inmates in front of the building or possibly to transport inmates to other locations.

20. Mr. Haqq has been a model employee during his time with DOCS. He has received a commendation for his attendance and maintains a good rapport with his superiors, fellow officers and inmates.

21. Since he began working at DOCS, Mr. Haqq's colleagues and superiors have known of his practice of wearing a kufi. Throughout the application and interview process, including during his psychological and physical testing, Mr. Haqq wore a kufi in full view of DOCS officials.

22. Inmates and other DOCS officers, including his superiors, have seen Mr. Haqq wearing a kufi on duty numerous times, both inside and outside of the facility. Prior to May 2005, when entering or leaving the facility each work day, inmates and other correction officers would see Mr. Haqq wearing a kufi at the main entrance. When Mr. Haqq would leave work, he would first put his kufi on at his locker and wear it through the facility on his way out. Similarly, upon entering the facility, Mr. Haqq would wear his kufi until he reached his locker.

23. Before May 2005, Mr. Haqq would regularly wear his kufi in uniform when his duties took him outside. During these assignments, he would typically be in close contact with inmates.

24. Furthermore, as has been the case both prior to and since May 2005, Mr. Haqq frequently comes into contact with inmates and other DOCS employees when not on duty. Mr. Haqq sees them at the Central Park North subway station and on the subway while traveling to and from work. He also sees inmates in his home neighborhood in Brooklyn, New York. When running into these individuals outside Lincoln, Mr. Haqq is always wearing his kufi.

25. Several months before May 2005, the Superintendent of Lincoln, Joseph V. Williams, the highest ranking official at the facility, saw Mr. Haqq in uniform on duty wearing a kufi. The two briefly conversed face-to-face before the morning lineup. At that time, Mr. Haqq was not reprimanded for contravening regulations, nor was he given any indication by the Superintendent that wearing a kufi presented a problem.

26. Between Mr. Haqq's arrival at Lincoln in 1996 and May 2005, there were no safety, security or morale problems as a result of Mr. Haqq's wearing a kufi on the job. At no time in his nine years of employment at Lincoln prior to May 8, 2005, did any superior indicate to Mr. Haqq that this aspect of his religious observance was problematic.

**Events of May 8, 2005**

27.     On Sunday, May 8, 2005, Mr. Haqq was working on the day tour. One of his assignments was to supervise inmates performing cleanup in front of the facility on 110th Street. En route to his outside post, Mr. Haqq stopped at his locker to put on his jacket and kufi, as he usually did before outdoor duty.

28.     On his way outside, Mr. Haqq stopped in the Watch Commander's office to ask a question of his superior. Both Sergeant Robert Wilson and Lieutenant Daryl Thomas, Sergeant Wilson's superior, were in the office at that time. When Sergeant Wilson looked up at Mr. Haqq, he responded to his question and then ordered Mr. Haqq to remove his kufi because it was not part of the sanctioned uniform. Knowing the importance placed on following orders in the correctional system, Mr. Haqq obeyed this order, even though Sergeant Wilson himself had seen Mr. Haqq in uniform wearing a kufi on many previous occasions and had never indicated he was in violation of uniform regulations.

29.     Under DOCS rules, discipline may be imposed for violating Department regulations or directives. Mr. Haqq's failure to heed Sergeant Wilson's order and DOCS uniform policy under Directive 3083 is grounds for disciplinary action, such as loss of privileges, written reprimand, fine, suspension without pay, or ultimately dismissal.

30.     Because Mr. Haqq was not willing to face the potentially grave economic and professional consequences of not complying with a direct order, he acceded to Sergeant Wilson's order.

**Mr. Haqq's Grievance Process and EEOC Complaint**

31.     In response to being ordered not to wear his kufi, Mr. Haqq filed a grievance on June 6, 2005 against DOCS through his union, claiming that "the wearing of [his] kufi in no way impairs or endangers the function of [his] duties in [his] capacity as Correction Officer." On June 8, 2005, DOCS denied the grievance, stating that "uniform and grooming standards are outlined in Dept. Directive 3083 and make no provision for the wearing of a kufi while on duty." Mr. Haqq appealed this decision. On September 23, 2005, DOCS denied his appeal, again citing Directive 3083 and stating that "[s]uch language is clear and makes no exception for any person, group or class of persons."

32.     After filing his grievance, Mr. Haqq still occasionally wore his kufi on duty. During this time, Superintendent Williams again saw Mr. Haqq wearing his kufi in uniform on duty. While on assignment supervising inmates outside the facility, Mr. Haqq saw Superintendent Williams entering the building. As he entered, the two acknowledged and greeted each other with a wave. Again, Superintendent Williams made no comments regarding Mr. Haqq's kufi.

33.     On October 21, 2005, Mr. Haqq submitted a complaint with the Equal Employment Opportunity Commission (the "EEOC"), claiming discrimination on the basis of religion. Lucien Leclaire, then Deputy Commissioner for Correctional Facilities of DOCS, responded to the

complaint with an affidavit restating the Department's steadfast opposition to allowing Mr. Haqq the right to wear a kufi. The affidavit concludes that "the Department is vehemently opposed to the granting of any accommodations to security staff employees which alter the uniform grooming regulations for reasons of religious practice." On July 12, 2006, Mr. Haqq received a right-to-sue letter from the EEOC.

34. Due to Mr. Haqq's increased fear of discipline and DOCS's aggressive and uncompromising defense of its position before the EEOC, Mr. Haqq has refrained from wearing his kufi at work since shortly after the EEOC's issuance of this right-to-sue letter.

35. Violating his deeply held religious beliefs by not wearing his kufi for large portions of the day is emotionally and spiritually difficult for Mr. Haqq.

**Other Agency Accommodations**

36. In contrast to DOCS's blanket ban, other agencies with similar security or discipline concerns have taken steps to accommodate religious expression in their uniform policies. For example, the New York City Department of Correction allows officers to wear religious garb including kufis, hijabs, and yarmulkes, and many of its officers do so. This accommodation, upon information and belief, has not resulted in any problems.

37.     Upon information and belief, the New York City Police Department and the Metropolitan Transportation Authority have made accommodations for Sikhs to allow them to wear their turbans while in uniform on duty.

38.     All branches of the United States military make reasonable accommodations to allow their members to wear religious head coverings while in uniform.

39.     Under DOCS Directive 4202 regarding inmate religious programs and practices, "[i]nmates are permitted to wear religious headcoverings in accordance with their religious beliefs." The directive explicitly includes kufis, yarmulkes and khimars.

40.     It is widely known among inmates, guards, and his superiors at Lincoln that Mr. Haqq is a practicing Muslim. They know this because, in addition to his wearing a kufi, Mr. Haqq's name, prayer mark and prayer activities all make his religious beliefs clear.  Even in those instances in which he recently has not been wearing his kufi, inmates who meet Mr. Haqq for the first time greet him with "*salaam aleikum*," a common greeting among Muslims. They do so because they identify Mr. Haqq as a Muslim based on his prayer mark.

41.     Mr. Haqq's wearing of a kufi while on duty presents no meaningful and legitimate safety, security or morale concerns, especially given Lincoln's status as a minimum-security, work-release facility.

CAUSE OF ACTION

42. The defendant's actions violate the plaintiff's rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

WHEREFORE, the plaintiff requests that this Court:

(1) Assume jurisdiction over this matter;

(2) Issue a declaratory judgment that the defendant's total ban of Mr. Haqq's wearing a kufi violates Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*;

(3) Issue an injunction requiring that the defendant allow the plaintiff to wear his kufi while on duty as a New York State Correction Officer, or otherwise requiring an appropriate accommodation of plaintiff's religious practice;

(4) Award the plaintiff attorneys' fees and costs; and

(5) Grant any other relief the Court deems appropriate.

Respectfully submitted,

NEW YORK CIVIL LIBERTIES UNION FOUNDATION, by

*/s/ Christopher Dunn*

CHRISTOPHER DUNN (CD-3991)
COREY STOUGHTON (CS-6436)
SARAH BRENNER*
DANIEL CLARKSON*
NIRAV SHAH*
New York Civil Liberties Union
125 Broad Street, 19th Floor
New York, NY 10004
(212) 607-3300

Dated: December 6, 2006                    Counsel for the Plaintiff
       New York, NY

*The plaintiff and the New York Civil Liberties Union Foundation have obtained leave of Court to permit these students to serve as attorneys in this matter pursuant to the Southern District's Plan for Student Practice in Civil Actions.